NOT DESIGNATED FOR PUBLICATION

No.121,099

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BRADEN M. LOVE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JEFFREY SYRIOS, judge. Opinion filed November 6, 2020.
Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Lesley A. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., ATCHESON, J., and BURGESS, S.J.

ATCHESON, J.: A jury sitting in Sedgwick County District Court convicted Defendant Braden M. Love of intentionally damaging Tanner Worley's car while it was in the parking lot of Towne East Mall, a large shopping center. On appeal, Love contends a jury instruction on the liability of aiders and abettors and of coparticipants in a crime deprived him of a fair trial because the State failed to prove aiding and abetting. We find the point to be without merit and affirm the guilty verdict and Love's resulting sentence.

1

Love and Worley had known each other for a while and had a falling out for reasons that are immaterial to this case and the issue on appeal. Worley worked at a store in the mall. He typically drove to work and left his car in the parking lot. As developed at trial, Worley had spiffed up his car with premium aftermarket lights, wheel rims, and decorative chrome. Late in the afternoon one day in mid-January 2017, Love and another man showed up at Worley's workplace. Love began goading Worley using insulting language and suggested he would be armed and waiting for Worley when he got off work. Love's conduct was sufficiently obstreperous that the store manager took notice and was concerned. A mall security officer and an off-duty police officer were alerted as Love and the other man left the vicinity of the store.

At trial in January 2019, Worley testified that he did not know the man who accompanied Love that day. And Worley characterized the man as standing back from Love as if to distance himself from the taunts and verbal abuse. The other man did not engage, let alone menace, Worley in the store.

Worley, however, was concerned that Love might do something to his car. So he and a security officer went to the parking lot. Worley testified that he saw Love and the other man he didn't know pounding on his car with their fists. As Worley and the security officer got closer, Love and the other man jumped into another car and drove away.

Worley's car had visible dents to the fenders and some other damage. At trial, the State presented evidence that repairs to the car would cost a little less than $2,400. In response to the prosecutor's questions, Worley testified that he did not give Love permission to damage his car. But he was not asked about the other man.

The jury convicted Love of criminal damage to property, a severity level 9 nonperson felony violation of K.S.A. 2016 Supp. 21-5813, and disorderly conduct, a misdemeanor violation of K.S.A. 2016 Supp. 21-6203. The district court later sentenced

Love to a prison term of 12 months and placed him on probation for 12 months for the criminal damage to property conviction, reflecting a standard guidelines sentence. The district court ordered Love to pay Worley restitution for the damage to the car. Love received a concurrent 30-day jail sentence with probation for the disorderly conduct conviction. Love has not appealed that conviction, and we do not consider it further.

On appeal, Love contends the district court's decision to instruct the jury on aider and abettor liability and the joint liability of participants in a crime undermined his right to a fair trial. More particularly, Love contends the State failed to prove an aiding and abetting theory because Worley never explicitly testified that he didn't give permission to the unidentified man to damage his car. Love, therefore, argues that if he simply helped the other man, he couldn't be guilty because the other man might have had permission from Worley to damage the car. Although creative, Love's argument comes up short.

To prove the criminal damage charge, the State had to show beyond a reasonable doubt that Love knowingly damaged Worley's car without Worley's permission and the resulting damage was between $1,000 and $25,000. See K.S.A. 2019 Supp. 21-5813(a)(1), (c)(2); PIK Crim. 4th 58.190 (elements of criminal damage to property). At the State's request and over Love's objection, the district court also instructed the jury on theories of criminal liability when more than one person may have played a role in the illegal activity. The district court used portions of PIK Crim. 4th 52.140 to prepare an instruction that stated:

> "As to Count 1, a person is criminally responsible for a crime if the person, either before or during its commission, and with the mental culpability required to commit the crime intentionally aids another to commit the crime or advises another to commit the crime.
> "All participants in a crime are equally responsible without regard to the extent of their participation. However, mere association with another person who actually commits

3

the crime or mere presence in the vicinity of the crime is insufficient to make a person criminally responsible for the crime."

The prosecutor told the district court the instruction was necessary because the evidence showed that both Love and his companion damaged the car. And without the instruction, the jurors might be confused about how the law allocates criminal responsibility in that circumstance. As we have indicated, Love objected to the instruction.

The first paragraph of the instruction outlines the statutory rule imposing criminal liability on a person who induces another person to commit a crime or otherwise aids or assists the other person. See K.S.A. 2019 Supp. 21-5210(a) (criminal liability for aiding and abetting). The second paragraph states the common-law rule that coprincipals in the commission of a crime are equally responsible for the crime. See *State v. Becker*, 290 Kan. 842, 852-53, 235 P.3d 424 (2010). The Kansas courts frequently characterize both theories of liability as forms of aiding and abetting.

Here, the State wanted the district court to give PIK Crim. 4th 52.140 primarily, if not exclusively, because of the rule set out in the second paragraph of the instruction. Applied to the evidence here, Love was responsible both for the damage he caused to Worley's car and the damage his cohort caused because they acted together to commit the wrongful act or actus reus that constituted the crime.

This was not a circumstance in which Love procured the other man to damage Worley's car at his behest or supplied him with a crowbar and hammer to carry out the crime. That sort of conduct removed from the wrongful act itself would have made Love guilty as an aider and abettor under the rule outlined in the first paragraph of the instruction. The conduct of a getaway driver or a lookout arguably straddles the two theories of criminal liability. Here, the first paragraph of PIK Crim. 4th 52.140 was, strictly speaking, irrelevant given the evidence presented at trial. But an otherwise proper

4

instruction is not erroneous or prejudicial to a criminal defendant simply because it may be extraneous. This court has recognized as much:

> "A jury instruction correctly characterized as superfluous or irrelevant shouldn't be given. By definition, it serves no good purpose in the case and becomes, at best, legal clutter. By the same token, however, if an unnecessary instruction fairly states even immaterial legal principles, it seldom would cause actual prejudice to one side or the other." *State v. Miller*, No. 109,716, 2015 WL 3632029, at *6 (Kan. App. 2015) (unpublished opinion).

In short, there was no tangible legal problem with the first paragraph of the instruction. And the second paragraph correctly described the law governing Love's criminal liability for participating in the particular acts causing the damage to Worley's car.

To Love's more particularized point on appeal, the trial evidence was sufficient to negate the notion that his companion might have had permission from Worley to damage his car. The evidence was circumstantial, since Worley was never directly asked about giving or not giving permission to Love's unidentified accomplice. But even the gravest crime can be proved with circumstantial evidence alone. *State v. Thach*, 305 Kan. 72, 84, 378 P.3d 522 (2016). In considering a defendant's challenge to the sufficiency of the evidence, we review the trial record in a light most favorable to the party prevailing below, here the State, and in support of the jury's verdict. An appellate court will neither reweigh the evidence generally nor make credibility determinations specifically. *State v. Jenkins*, 308 Kan. 545, Syl. ¶ 1, 422 P.3d 72 (2018); *State v. Butler*, 307 Kan. 831, 844-45, 416 P.3d 116 (2018); *State v. Pham*, 281 Kan. 1227, 1252, 136 P.3d 919 (2006). The issue for review is simply whether rational jurors could have found the defendant guilty beyond a reasonable doubt. *Butler*, 307 Kan. at 844-45; *State v. McBroom*, 299 Kan. 731, 754, 325 P.3d 1174 (2014).

The uncontradicted evidence established that Worley had never met Love's companion before he and Love showed up at the store. Worley testified that he didn't speak with the man or otherwise interact with him that day. So Worley could not have given the man permission to damage his car. Moreover, Worley immediately expressed apprehension about his car and wanted to check on it—behavior that was wholly inconsistent with having just given someone permission to smash up the car. That's sufficient to uphold the jury's guilty verdict. Love's contrary notion floats on an airiness of nothing more than empty speculation and wishful thinking; it has no legal or factual anchor whatsoever.

Affirmed.